**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**
**Plaintiff,**

**Cr. No.** **11-cr-20468**
**v.** **Hon. Arthur J. Tarnow**

**PRADEEP PANDYA,**

**Defendant.**
**________________________________/**

**DEFENDANT PANDYA'S SETNENCING MEMORANDUM**

**Introduction**

Mr. Pandya pled guilty to Count One, Conspiracy to commit Helath Care Fraud and Count 11, Conspiracy to Distribute Controlled Substances, pursuant to a Rule 11 plea agreement. The Rule 11 provides for a guideline range of 70-87 months based upon an offense level of 27 and a criminal history category I.

Counsel knows this Court is well aware of *Booker*, and will not belabor the point. Defendant Pandya urges the Court to consider the factors contained in 18 U.S.C. 3553(a) and deviate from the advisory range in fashioning a sentence. The government will also be filing a motion pursuant to Section 5K based upon Defendant's substantial assistance.

**Background**

Pradeep Pandya is a gentle, kind man, whose involvement in this matter is belied by his true character, reflected in the law abiding life he lived before this case began, and for the last 2 years since his arraignment. Like others charged in this case, Mr. Pandya did not join the Patel scheme with criminal intent. Further, as discussed below, Mr. Pandya's involvement in criminal activity was relatively short, spanning approximately 6 months from June, 2010, until around December 16, 2010, when he ceased filling prescriptions at Tri-City Pharmacy in Bay City, Michigan.

Mr. Pandya immigrated to the United States from India in 1997. He lived in Maryland, where he worked as a pharmacist for RiteAid from 2001-2003. Prior to immigrating to the U.S., Mr. Pandya obtained his Masters degree in pharmacy, passing with "first class distinction" for his Master's degree.

Mr. Pandya married, and in an attempt to move closer to his wife's siblings in the Midwest, Mr. Pandya began working for Rite Aid in Flint, Michigan, in 2003. He remained employed by Rite Aid in Flint until February, 2010. Mr. Pandya had young kids at home, and wanted to find more reasonable hours than the 12 hour shifts he'd been working for Rite Aid.

At this time, Mr. Pandya was introduced to Bob Patel through Mehul Patel, who Pandya knew through his Rite Aid employment. Unfortunately, if not tragically, that introduction resulted in Defendant Pandya's involvement in this case.

Mr. Pandya went to work for Patel at the Tri-City Pharmacy in March, 2010. Initially he needed to be trained on the system in use at Tri-City. Mr. Pandya did begin filling unlawful prescriptions, and submitting unlawful billings, in approximately June, 2010. He did continue that practice for Patel until December 16, 2010, when a state inspector conducted an on-site inspection of Tri-City, and informed Pandya of the unlawful practices. Pandya sincerely did not comprehend the depth of the conspiracy until he had been well hooked into it by Patel. It certainly was not his intention to begin criminal practices when he accepted the job offer from Patel. Pandya stopped filling the prescriptions at that time, causing a rupture with Bob Patel.

## **Cooperation**

Pradeep Pandya made the decision to cooperate with the government immediately after his arrest. Though his knowledge was limited to what he knew and learned while at Tri-City, Pandya made a genuine and good-faith effort to assist the government in its prosecution of others. In addition to debriefings, Pandya did testify at the trial of Vinod Patel before this Court last summer, in July, 2014.

## **3553 Factors**

**(a)(1): The nature and circumstances of the offense and the history and characteristics of the defendant:**

As noted by the Probation Department, Mr. Pandya is a 51 year-old man with no prior criminal history of any kind. Mr. Pandya is the sole bread-winner in his household. He is married with 2 young children. In addition, his elderly parents reside in the home. Incarceration would have devastating consequences on the entire household. His wife has never worked. His parents are not in good health. Mr. Pandya's siblings live in India, and they have no relatives in Michigan.

**(a)(2)(A): To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

According to the Probation Department, "Given the defendant's lack of prior criminal conduct, the Court may wish to evaluate how much custody is necessary to achieve this sentencing goal, as the Court may conclude that this sentencing goal may be achieved by a custodial term of less than the applicable sentencing guideline range."

Mr. Pandya thoroughly understands the seriousness of his involvement in this case. He is absolutely devastated by it. Counsel has spent several hours with both Mr. and Mrs. Pandya, while they have sobbed and convulsed over the devastating consequences they now face. Their collective grief underscores not only Mr. Pandya's remorse, but the fact that Mr. Pandya will **never** again be involved in such foolish, criminal behavior.

As is often the case, any prolonged absence of Mr. Pandya from the family will cause much more devastation for the family members left behind in the home.

**(a)(2)(B): To afford adequate deterrence to criminal conduct:**

According to the PSR, "Given his lack of prior criminal conduct, his employment history, and his level of educational attainment, the defendant does not appear to require custodial placement to be deterred from such conduct in the future."

**(a)(2)(C): To protect the public from further crimes of the defendant:**

In fact, Mr. Pandya obtained employment from Patel, but not monetary gain from the criminal enterprise. Mr. Pandya has been able to work as a pharmacist during the pendency of this case. Pradeep Pandya was hired by Clarkston Pharmacy in August, 2013, where he has been employed full-time since. (Letter from Pharmacy owner attached).

The PSR notes at par. 51, page 15, "When asked about hobbies or leisure activities, Pandya reported none." This makes sense. Mr. Pandya has effectively been on self-imposed house arrest since his arrest. He goes to work, and is otherwise at home with his family, with the exception of an occasional prayer session at the Kashi Temple in Flint, Michigan. His only desire is to provide for his family.

Counsel has no doubt that Mr. Pandya will continue a life of employment and family obligation for as long as he is allowed. That is his only intent and concern.

He poses absolutely no danger to the community, and is simply trying to achieve the survival of his family.

**(a)(2)(D): To provide the defendant with needed educational or vocational training, etc.:**

According to the PSR, "A custodial term in not necessary to provide such services to the defendant."

**(a)(6): The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct:**

The Court has sentenced a wide variety of defendants in this case to a wide variety of sentences, including some closer to 12 months custody.

## Conclusion

Counsel has spent hours with Mr. and Ms. Pandya, bearing witness to their enormous grief and fear. Their intense sobbing over the prospect of loss and separation is absolutely heartbreaking.

Mr. Pandya has been living a life equivalent of house arrest since this case began. It is clear that that is exactly what he will continue to do; work, return home to care for his family. No travel; no hobbies; no leisure; only care for family.

In view of the above, and consistent with 3553(a), together with his cooperation, Defendant Pandya urges the Court to fashion a sentence that will spare

the family devastation and allow Defendant to continue his positive path, and make restitution more likely and possible.

Respectfully submitted,

**s/Sanford Plotkin**
Sanford Plotkin (P38691)
615 Griswold St., Ste. 1116
Det. MI 48226
313-963-4529
sanfordplotkin@gmail.com

Dated: June 24, 2015