16

FILED
SEP 27 2016
CLERK'S OFFICE
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PRADEEP PANDYA** | ) | **Pro-Se** |
| **Petitioner** | ) | |
| **v.** | ) | **Case No. 11:cv-20468** |
| | ) | **Judge Arthur J. Tarnow** |
| **UNITED STATES OF AMERICA** | ) | |
| **Respondent** | ) | |

---

**MOTION PURSUANT TO 28 U.S.C. SECTION § 2255**

---

NOW COMES the Petitioner, Pradeep Pandya, an inmate currently incarcerated at F. C. I. Morgantown, proceeding pro-se in a Motion Pursuant to 28 U.S.C. Section § 2255, asking this Honorable Court to correct the sentence by a prisoner in federal custody. Petitioner moves this Honorable Court to grant relief available under Amendment 794 to the United States Sentencing Guidelines (USSG), as outline hereinafter and for the reasons shown in the attached MEMORANDUM IN SUPPORT of Petitioner's Motion to correct his sentence.

This §2255 Motion is being filed under Section (f) (4), regarding the one-year period of limitation on filing a §2255 Motion, stating that (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. In the instant case, the newly amended U.S.S.C. §3B1.2, adopted November 1, 2015 and to be effective November 1, 2016, and made retroactive to cases on direct appeal by the Ninth Circuit in United States v. Quinter-Leyva, makes this current filing permissible under the statutes, as it was not available by due diligence until after 5/17/16, when the Ninth Circuit Ruling came down. Therefore, the one-year statute of limitations on filing a §2255 for this instant case

began on 11/1/15 and ends on 11/1/16, hence the filing of this is not an untimely filing of this habeas corpus petition.

The facts and history of the case avers as follows:

1. A superceding indictment in this case was filed against the Petitioner on 3/19/13, as to Counts 1,11 and 21.

2. An arrest warrant for the Petitioner was entered on 3/19/13.

3. The Petitioner made an initial appearance in Court before the Magistrate Judge on 3/19/13.

4. During October of 2013, the Petitioner entered a change of plea and a hearing was held before Honorable Judge Arthur J. Tarnow.

5. On 6/30/15, the Petitioner was sentenced to 27 Months on Counts 1 and 11, to serve a sentence of 27 months to be served concurrently, and Count 21 of the first superceding indictment was dismissed by the court. Count 1 was Health Care Fraud Conspiracy under 18 U.S.C. §1349 and 18 U.S.C. §1347. Count 11 was Conspiracy to Deliver Controlled Substances under 21 U.S.C. § 846 and 21 U.S.C. §841(b)(1)(c).

The amendment, under which relief is hereby being requested, is found in U.S.S.G. §1B1.10(c). The Ninth Circuit Federal Court of Appeals has recently decided that the Amendment resolved a circuit split, and was intended as a clarifying amendment, therefore it applies retroactively to direct appeals. See United States v. Quinter-Leyva, 2016, U.S. App. LEXIS 8989, No. 14-50509 (Ninth Cir. 5-17-2016).

Newly amended 3B1.2 now states that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered" for the reduction and [t]he fact that a Defendant performs an essential or indispensable

role in the criminal activity is not determinative." Id.

The Amendment also included a non-exhaustive list of factors a Court "should consider" in determining whether to apply a minor role reduction. Id. The factors are:

(i) The degree to which the Defendant understood the scope and structure of the criminal activity;

(ii) The degree to which the Defendant participated in the planning or organizing the criminal activity;

(iii) The degree to which the Defendant exercised decision making authority;

(iv) The nature and extent of the Defendant's participation in the commission of the criminal activity, including the acts the Defendant performed and the and the responsibility and discretion the Defendant had in performing those acts;

(v) The degree to which the Defendant stood to benefit from the criminal activity.

The Amendment states that when a District Court conducts and assessment of whether a Defendant should receive a minor role reduction, "the Defendant is to be compared with the other participants' in the crime, not with a hypothetical average participant." U.S.S.G. App C Amend 794. The commission explained that "[f]ocusing the Court's attention on the individual Defendant and the other participants is more consistent with the other provisions of Chapter Three, Part B." Id.

The facts of this case and the arguments presented hereinafter in the attached MEMORANDUM IN SUPPORT OF MOTION, will clearly outline how this Petitioner complies with all the suggested factors that the Court "should consider" in a case requesting a minor role reduction in their sentence.

The Petitioner, Pradeep Pandya, asks this Honorable Court to correct his sentence for the aforementioned reasons and for the reasons shown and set forth in the attached memorandum.

Respectfully submitted:

Pradeep Pandya, 48236-039
Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DISTRICT**

| | | |
|---|---|---|
| **PRADEEP PANDYA** | ) | **Pro-Se** |
| **Petitioner** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11:cv-20468** |
| | ) | **Judge Arthur J. Tarnow** |
| **UNITED STATES OF AMERICA** | ) | |
| **Respondent** | ) | |

---

**MEMORANDUM IN SUPPORT OF MOTION PURUSANT TO 28 U.S.C. SECTION § 2255**

---

NOW COMES the Petitioner and asks this Honorable Court to grant the Petitioner a "minor role reduction" based on the law, reasons and arguments presented in the attached §2255 Motion and this MEMORANDUM IN SUPPORT OF MOTION PURSUANT TO 28 U.S.C. SECTION §2255.

The Petitioner believes and trusts that the Court will find that Petitioner fills all of the requirements and suggested factors to be considered by the Court in determing if Petitioner qualifies for a "minor role reduction" as promulgated by Amendment 794 to the United States Sentencing Guidelines. The Petitioner will describe a brief history and factual background of the case and will further offer to the Court detailed information of his true involvement in this instant case as well as citations of law and a point by point description of how the Petitioner will show that the rules and factors for the Court to consider are fully in his favor.

The Petitioner will then conclude this Memorandum and ask for this Honorable Court to find in his favor and grant his motion and correct his sentence.

## 1. Case History and Factual Background

1. A superceding indictment in this case was returned against the Petitioner on 3/19/13, as to Counts 1, 11 and 21.

2. An arrest warrant was issued for the Plaintiff on 3/19/13.

3. The Petitioner made an initial appearance in court before the Magistrate Judge on 3/19/13.

4. During October of 2013, the Petitioner entered a change of plea and a hearing was held before Judge Arthur J. Tarnow.

5. On 6/30/15, the Petitioner was sentenced to 27 months on Counts 1 and 11, to a sentence of 27 months to be served concurrently, and Count 21 of the indictment was dismissed by the Court. Count 1 was Health Care Fraud Conspiracy under 18.U.S.C. §1349 and 18 U.S.C. § 1347. Count 11 was conspiracy to Deliver Controlled Substances under 21 U.S.C. §846 and 21 U.S.C. §841(b)(1)(c).

The Petitioner was a licensed Pharmacist that had been employed by the Rite-Aid Corporation and left their employment to come to work for Tri-City Apothecary, originally located in Saginaw, Michigan which later closed that location and moved to Bay City, Michigan. The main customer for Tri-City was a Flint, Michigan Health Care location, which was also owned by the same person who owned Tri-City. Petitioner came to work in March of 2010, and since the facility was open only weekdays, he was the main Pharmacist, but was assisted by another part-time Pharmacist as needed. By state law, the Pharmacist on duty is considered to be the lead Pharmacist at that time. The Pharmacy did not sell any items other than a few over-the-counter drugs and the balance of the business was by prescriptions. Petitioner was aware that the major customer was a Flint, Michigan health care facility.

which was located between 30-40 miles from Saginaw, and after the Pharmacy moved to Bay City, would have been located a total of 50-55 miles away in the same direction. Petitioner dispensed the prescriptions as ordered by a Physician, and usually once a day or every two days a driver from the Flint Health Care Facility would come to pick them up. Since there were other Physicians located around both the pharmacies, there were some walk-in customers from those nearby offices. The billing for all prescriptions was done by someone unknown to the Petitioner. All drugs ordered by any of the physicians were dispensed and delivered as noted. The billing person was said to be someone who was trusted by the owner and who had all log in ID's and Passwords necessary to bill the appropriate parties. In July of 2010, less than four months after coming to work there, Petitioner discovered a couple of boxes of filled prescriptions sitting in the corner of the Pharmacy. Petitioner made inquiry of the pharmacy technician that was working, who indicated that the boxes were filled with returns from Flint, to be sent back to the supplier. Undaunted, Petitioner made an additional inquiry with the brother of the facilities owner, who gave the same story and told Petitioner it was not his problem, and to leave it alone. Since there was required paperwork to be done by law, the Petitioner took it upon himself to go to Flint and to meet with the prescribing Doctor as well as the administrator of the facility. He confronted them over the issues and was assured that the required paperwork would be completed and that in the future, there would be no other such problems. For the time after the visit to Flint and until a state inspector came to visit on 12/9/10, there were no other problems. The inspection resulted in only three minor items that were explained and/or corrected to the inspectors satisfaction. However, while the inspector was present,Petitioner asked her if there were problems with the chain of pharmacy operations owned by Patel. She indicated

to the Petitioner that the state board of pharmacy licensing was concerned that something was not right and in her words, some "bad stuff" was alleged to be going on. Her advice to Petitioner, after further questioning was, to move on as soon as it was feasible.

While the return of the unused drugs from Flint was Petitioner's major concern, it was not all that unusual in one sense that people did leave those types of facilities by going home or sometimes passing away, and in those cases all prescription drugs have to be returned to the dispensing pharmacy, the insurance billing claims reversed and then the drugs sent back to the supplier. But, the size of the returns and the number of times they were evident on site was a serious concern to the Petitioner and became the basis for his inquiry of the inspector. Just four months later, Petitioner was able to secure other employment and without notice, just entered Tri-City and took his certificates off the wall and left. Petitioner notes however, that as of October 2010, after Petitioner's visit to the Health Care Facility in Flint in July of that same year, Flint had a new pharmacy open, owned by the same owner as Tri-City, to serve the Flint Health Care Facility and from that point on, no further prescriptions were sent from Bay City to Flint.

Petitioner came to work for Tri-City at a salary of $45.00 per hour and by prior agreement, obtained a raise to $50.00 per hour after six months on the job. This is below what Petitioner was making with Rite-Aid and similar to the salaries applied to other licensed pharmacists in the state. There were no bonus monies applied nor any gifts or profit sharing nor any other kind of renumeration, save only for the base hourly rate. From 1/1/11 to 4/6/11, Petitioner was paid $30,000 in total salary but at the end of the year, the owner was not able to provide a W-2 so Petitioner's CPA filed the income as if it were a 1099.

As a summary of this section of the case history, Petitioner came to work for Tri-City, dispensed prescriptions based on doctor's written orders, added nothing to them, transferred nothing from them, and upon seeing the returns, on Petitioner's own initiative went over 30 miles to visit with the Doctor at Flint that was writing the scripts as well as the health care administator, and had them follow-up with the needed documents for the prescriptions that had deficiencies, and was assured that no other problems would be forthcoming from their facility. And, as noted, soon after they quit sending anything to Tri-City and kept it all in-house at Flint.

Having left on 4/11/11 from Tri-City, the Petitioner had co-ownership in a licensed facility that was not yet opened, and prior to its opening, transferred his ownership to Petitioner's wife and the wife of the other co-owner. Then, when that new Pharmacy opened under the operating name of Park Shelton Pharmacy, which was located in Detroit, Petitioner went to work as a salaried employee and was one of two pharmacists working this new operation. It was located inside a building housing a Doctor's office and was surrounded by a number of other physicians' offices who provided patient referrals. No service from Park Shelton was ever made to the Flint location or to any other operation owned by Babubhai Patel. This facility made profits initially, but with many other Pharmacy operation competing with them, it was forced to close on 1/26/12. During that time, from his salary of $95,000 and his wife's salary and the profits that were generated in 2011, Petitioner reported $260,000 on his income tax return (joint return) and all taxes were paid. There was never any charge from any state of federal authority as to any irregularities in the operation of this facility. Inspections made at Park Shelton by State Board Examiners resulted in no allegations as to any type of misconduct.

## 2. Argument

Following the requirements of Amendment 794 §3B1.2 of the U.S.S.C.'s guidelines, the Petitioner offers the following arguments.

1. Did the Petitioner have any proprietary interest in the criminal activity.

No, None at all. It is clear that the Petitioner had no ownership or proprietary interest in Tri-City. He was simply an hourly employee, hired on a fixed price per hour basis, with no incentives, bonus monies or other gifts or things of value provided other than hours worked times hourly wage.

2. The degree to which the Defendant understood the scope and structure of the criminal activity.

The Petitioner came to work as a registered pharmacist and that was his sole capacity during the short term of his employment. He came to work in March of 2010 and in July of 2010, some four months later, he discovered the boxes of returns of filled prescriptions and immediately took action to investigate, including making a trip to the Flint Health Care Facility that was doing the returns, and at that point became suspicious of the activities of Tri-City and the Flint Center. On 4/11/11, having not seen the problems totally resolved, Petitioner left Tri-City without notice. Until his involvement in the instant case, he was not aware of the structure and scope of the activity which involved his employer and his employer's family.

3. The Petitioner had no role of any kind in the planning or organizing of the criminal activity, which was well under way for an period of time prior to his arrival at work, said length of prior time being unknown to Petitioner.

4. The Petitioner exercised absolutely no decision making authority with

regard to the operation of the Pharmacy. His only work was that of a registered Pharmacist who filled the prescriptions authorized by the Physicians and saw that the proper information was entered into the computer system.

5. The nature and extent of the Defendant's participation in the commission of the criminal activity, including the acts the Defendant performed and the responsibility and discretion the Defendant had in performing those acts.

The Defendant was only doing his job and he took those responsiblities to heart as is noted in his trip to Flint to try to understand why there were so many returns and what paper work and documentation was required to properly process those returns including crediting the paying agency or insurance company that had paid for the prescription in the first place. He also made an inquiry of the inspector from the State who appeared in December of that year, and upon questioning her, took her advice and sought other employment due to the cloud that was hanging over Tri-City and its other operations. Petitioner used a high level of discretion after finding the boxes of returns and making his trip to Flint.

6. The degree to which the Defendant stood to benefit from the criminal activity.

The Petitioner did not benefit in any way beyond being paid for the legal tasks he performed by filling authentic prescriptions as was his job as the licensed pharmacist on duty at the time. There was no benefit of any kind other than his pay at an agreed hourly rate times the number of hours he actually worked at Tri-city.

It is noted that the Defendant bears the burden of establishing his qualification for a minor role reduction by a preponderance of the evidence. see **United States v. Alvarez-Coria,** 447 F3d. 1340, 1343 (11th Circ.2006).

Under U.S.S.G. §3B1.2, a defendant may receive a two-level reduction "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. §3b1.2(b). The application notes to §3B1.2 say that the section "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable then the average participant." (3B1.2, comment n.3(A)). The determination of whether to apply a mitigating role adjustment " is heavily dependent upon the facts of the particular case" (§3B1.2, comment n.3(C)). In general, the two-level minor role adjustment "applies to a defendant ...who is less culpable that most other participants, but whose role could not be described at minimal." (§3B1.2, comment n.5).

See also **United States v. DeVaron**, 175 F.3d at 940, This case directs that the court should consider two principles....

Based upon the facts and case law and citations of law contained in the §2255 and in this Memorandum in Support of §2255, the Petitioner maintains that the test threshhold of **United States v. DeVaron** is met and well established by the preponderance of the evidence. Therefore the Petitioner Moves this Honorable Court for a granting of the minor role reduction.

U.S.S.G. App. C, Amend 794. "Although this court applies the version of the guidelines in effect on the date of sentencing, when reviewing the District Court's application of the Guidelines, we consider clarifying amendments retroactively on appeal regardless of the date of sentencing. **United States v. Jerchower**, 631 F.3d 1181, 1184 (11th Cir. 2011).

# 3K CITATIONS OF LAW

1. United States v. Quinter-Leyva, 2016, U.S. App. LEXIS 8989 No. 14-50509 (Ninth Cir. 5-17-2016).

The above listed case is the driving case behind this filing and it applies the 794 U.S.S.C. Amendment 794 to the instant case.

2. Haynes v. Kerner, 404 U.S. 519, 520-21 (1971 and Hill v. Braxton, 277F. 3d 701, 707 (4th Cir. 2002) and Hughes v. Rowe, 499 U.S. 5, 9 (1980)

The above listed three cases relates to the filing by a Defendant Pro-Se.

3. United States v. Jerchower, 631 F.3d 1181, 1184 (11th Circ. 2011)

4. United States v.Alvarez-Coria, 447 F3d. 1340, 1343 (11th Cir. 2006)

5. United States v. DeVaron, 175 F.3d at 940.

## 5. Conclusions

The factors that the Court "should consider" have been fully and completely outlined and discussed hereinbefore. The case law sets forth a threashhold which has been fully met by the arguments and case history and background contained hereinbefore. The fact that this Amendment is a clarifying amendment and also resolved a circuit split is clearly set forth in both Quinter-Leyva, from the 9th Circuit and Jerchower from the 11th Circuit.

The Petitioner met the guidelines of this amendment by having no proprietary interest in the criminal activity, and took nothing from it other than his hourly rate of pay that was based on work performed and not on any illegal acts, as well as all of the other details set forth in this Memorandum in Support and the initial filing of the §2255 appeal.

WHEREFORE, the Petitioner prays that this Honorable Court will, after giving full consideration to the factors set forth hereinbefore, the citations of law, and the arguments made, grant to the Petitioner a U.S.S.G. 794 Amendment minor role reduction and correct his sentence accordingly.

Respectfully submitted:

Pradeep Pandya, Pro-Se

# CERTIFICATE OF SERVICE

I, Pradeep Paynda, do hereby certify that I have, this 21 day of September, 2016, placed in the Prison Mail System at F. C. I. Morgantown, P. O. Box 1000, Morgantown, West Virginia, 26507-1000, one Original copy of

**MOTION PURSUANT TO 28 U.S.C. SECTION §2255**
**and**
**MEMORANDUM IN SUPPORT OF MOTION PURUSANT TO 28 U.S.C. §2255**

sent First Class Mail, Postage pre-paid, to be delivered to the following addresses:

Clerk of Courts
231 West Lafayette Blvd.
Fifth Floor
Detroit, MI 48226

And

Office of the United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226

Pradeep Pandya, , Pro-Se
Federal Reg. No. 48236-039
F C I Morgantown
P O Box 1000
Morgantown, West Virginia
26507-1000

#48236-039
PRADEEP PANDYA
FEDERAL CORRECTIONAL INSTITUTE
P.O. BOX 1000,
MORGANTOWN
WV-26507-1000




⇨48236-039⇦

Theodore Us Clerk Levin
231 W. Lafayette Blvd,Room#564
Detroit, MI 48226
United States

48226$2718 C008